UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re

**ALEJANDRO CERVANTES,**

            Debtor.

) Case No. 18-10306-B-13
)
) DC No. MHM-4
)
)
)
)
)

In re

**JULIO BARRERA MARTINEZ and
BLANCA ESMERALDA CHINCHILLA,**

            Debtors.

) Case No. 19-12274-A-13
)
) DC No. MHM-1
)
)
)
)
)

**RULING ON CHAPTER 13 TRUSTEE'S OBJECTIONS
TO ATTORNEY FEE COMPENSATION**

**Parties and Attorneys**

Thomas O. Gillis, *pro se*; Michael H. Meyer, Chapter 13 Trustee
(Fresno Division); Russell D. Greer, Chapter 13 Trustee (Modesto
and Sacramento Divisions); Marta E. Villacorta, for Tracy Hope
Davis, United States Trustee Region 17.

Before: Honorable Ronald H. Sargis (Chief Judge); Honorable
Fredrick E. Clement; Honorable René Lastreto II, Bankruptcy
Judges.

///
///
///

**Introduction**

In this District, counsel for a chapter 13 debtor can elect to be compensated by a flat fee, subject to certain exceptions. Debtor's counsel in these cases elected that option and received the full fee. Since the State Bar of California has suspended counsel for two years, counsel cannot complete the work necessary to earn the fee. The chapter 13 Trustee objected to the fee in each case. We SUSTAIN the objections, present a formula to determine the proper fee, and after applying the formula, order counsel to refund certain amounts to the Chapter 13 Trustee for the benefit of the respective estates.

**Facts**

A.  Background

Before his privileges to practice law were suspended for two years by the State Bar of California[1] effective February 15, 2020, Attorney Thomas O. Gillis ("Gillis") was a prolific filer of bankruptcy cases in all divisions of this District. Four Hundred Eighty-One (481) of his filings are pending Chapter 13 cases.[2] These cases are in various stages. In some cases, the plans have been confirmed, the deadline to file claims has passed, all plan modifications are completed, and they await

---

[1] Tom Gillis has candidly stated to the court that he signed a stipulation for his suspension on or about April 30, 2019. The Supreme Court of California approved the stipulation November 1, 2019. After considering Gillis' two requests, the State Bar's Review Department extended the effective date of the suspension to January 31, 2020 and then to February 15, 2020. The court takes judicial notice of these facts under Federal Rule of Evidence 201 from another proceeding in this court, 20-101. The State Bar case numbers are: 16-O-10780; 17-O-02624; 17-O-04790. Id.

[2] The court takes judicial notice of this fact. Federal Rule of Evidence 201.

conclusion of the plan and discharge.  Some are recently filed and there is no confirmed plan. Others are in between.

In this District, compensation of debtors' counsel in Chapter 13 cases is governed by 11 U.S.C. §§ 329 and 330.[3]  The procedure for counsel to request payment is governed by Rules 2016 and 2017 and LBR 2016-1.  More about these later.  For now, debtors' counsel in Chapter 13 cases in this District have two possible avenues for compensation.  First, they can elect to file a fee application and have the fees reviewed by the court under § 330.  LBR 2016-1(a).  Second, they can elect to accept a presumptive "no-look" fee.  LBR 2016-1(c).  The former election is colloquially referred to as the "opt-out fee" — the latter the "opt-in fee." If the opt-in fee (or "flat fee") is selected, the maximum fee for an individual case is $4,000.00 — a business case is $6,000.00.  LBR 2016-1(c)(1).  The no-look fee option has a long history in this District.  Consumer attorneys can choose the no-look fee or not.  The attorney decides whether the no-look fee adequately compensates for the services rendered in a Chapter 13 case. Alternatively, the attorney considers whether a fee application with its attendant demands and costs is a more suitable compensation method. Opt-in fee recipients must also file a district-wide form: "Rights and Responsibilities of Chapter 13 Debtors and their Attorneys."  LBR 2016-1(c)(2). The "Rights and Responsibilities" sets forth what both debtors' counsel and the client are to do in connection with the case and

---

[3] Unless otherwise stated, references to sections refer to Title 11 of the United States Code §§ 101-1532, "Rule" refers to the Federal Rules of Bankruptcy Procedure, "Civ. Rule" refers to the Federal Rules of Civil Procedure, "Ev. Rule" refers to the Federal Rules of Evidence and "LBR" refers to the Local Rules of Practice for the United States Bankruptcy Court, Eastern District of California.

addresses counsel's compensation.[4] Pre-petition responsibilities include:

- the attorney and client meeting together and discussing the objectives in filing the case;
- the attorney reviewing the documents to be filed with the court, and;
- explaining to the debtor the scope of the representation.

Post-petition responsibilities include:

- preparing and filing any necessary plan modifications pre- or post-confirmation provided the modifications were or should have been anticipated at the time of the original confirmation;
- objecting to claims, and;
- timely and appropriately responding to any motions or objections brought by the chapter 13 trustee.

The "bargain" for counsel choosing to opt-in is evading contemporaneous time keeping tasks in return for a presumptive fee which may not reflect actual services rendered in a particular case. This "bargain," though, is not without risk.

Counsel's election of the opt-in fee is not inviolate. If a party in interest objects to the fee, the presumptive "opt-in fee" is discarded and debtor's counsel is relegated to receive compensation under a confirmed Plan after filing a fee application that is approved by the court under §§ 329, 330 and Rules 2016 and 2017. LBR 2016-1(a). The court also has

---

[4] LBR 2016-1(c)(3) states the "opt-in" fee is not a retainer but should fairly compensate counsel for all pre-confirmation and most post-confirmation services including reviewing claims and modifying a plan to conform to the filed claims. Counsel who has "opted-in" may apply for additional fees if confronted with "substantial and unanticipated post-confirmation work."

authority under § 329 and Rule 2017 and at any time before entry
of the final decree to examine the fee and allow different
compensation if the fee is excessive or if the compensation has
proven "improvident in light of developments not capable of
being anticipated at the time the plan is confirmed or denied
confirmation." LBR 2016-1(c)(5).

Gillis advised the court he does not keep contemporaneous
time records.  He freely elected the opt-in fee in the cases
before us and in most of the Chapter 13 cases he filed.  In the
two cases presently before us, Gillis has already received the
$4,000.00 fee.  We summarize these two cases now.

B. The cases

I. In re Alejandro Cervantes, 18-10306-B-13.  Mr. Cervantes
filed his Chapter 13 case with Gillis as his counsel on January
31, 2018.  His 36-month Chapter 13 plan was confirmed about six
months later.  Doc. #47.[5]  Gillis received $2,000.00 pre-petition
and received the $2,000.00 balance under the confirmed plan.
Doc. #65.

Chapter 13 Trustee Michael Meyer ("Trustee") filed and
served a "Notice of Filed Claims" seven months ago.  Doc. #48.
This event triggers debtor's counsel to review the filed claims,
consult with the debtor and, if necessary, file and confirm a
modified plan to accommodate unexpected claims.  Gillis did not
file a modified plan in this case.

Mr. Cervantes has had some difficulty maintaining his plan
payments.  Beginning May 2019, he was disabled for several

_____

[5] All Electronic Case Filing references will be cited as "Doc." and
refer to the docket of each respective case, unless otherwise specified.

months, his income stream was impacted, and he defaulted under his plan.  Now, he needs a modified plan to cure his post-petition default.  The Trustee filed a motion to dismiss but has withdrawn that motion since Mr. Cervantes has almost cured the defaults.  Doc. #58, 70.  Mr. Cervantes testified at the dismissal motion hearing that he borrowed money from a family member so he could cure his defaults.  Doc. #74.  He also testified that he did not personally speak to Gillis until he met him at his meeting of creditors.  Id.

Unless modified, Mr. Cervantes's plan provides for payments of $655.00 per month for months 1-19 and payments of $1,255.00 per month for months 20-36.  Doc. #14.  It appears the plan's purpose is to save Mr. Cervantes's home.  The plan requires Mr. Cervantes to directly pay the beneficiary of the first deed of trust encumbering his home.  The beneficiary of the second deed of trust was in arrears when the case was filed, and the Trustee is making arrearage and regular monthly payments to this creditor.  Unsecured claims are to receive a 53% dividend under the plan.

If the plan is completed, Mr. Cervantes will need to establish what is necessary to receive a discharge under § 1328.


II.  In re Julio Martinez and Blanca Chinchilla, 19-12274-A-13.  Mr. Martinez and Ms. Chinchilla filed their joint Chapter 13 case with Mr. Gillis as their counsel on May 30, 2019.  Their 36-month plan was confirmed four months later.  Doc. #16.  Mr. Martinez and Ms. Chinchilla paid Gillis his entire $4,000.00 opt-in fee before the petition was filed.  Id.; doc. #22.

The Trustee filed the Notice of Filed Claims three months ago.  Doc. #18.  The deadline to object to any filed claims was February 11, 2020 and no objections were filed.  Id.  The deadline to file plan modifications, lien avoidance, or collateral value motions was March 12, 2020.  None of these motions were filed.

Mr. Martinez's and Ms. Chinchilla's plan requires payments of $115.00 per month for the duration.  They propose to pay 7% to creditors with allowed unsecured claims.  The filed claims total a little less than $20,000.00, which is over $34,000.00 less than what was scheduled.  Their home mortgage is classified in class four, which requires direct payment to the lender by the debtors.  Their mortgage lender has filed and served a Notice of Payment Change adding $600.00 in legal fees to the balance owed related to preparing and filing the proof of claim and "plan review."  There has not been an objection to the payment change.

In addition to analyzing the payment change, these debtors will need assistance in obtaining a discharge upon completion of plan payments under § 1328.

Both cases share common attributes: relatively recent filings, simple plans, distributions to allowed unsecured claims, and a 36-month duration.  The key parallel for us though is that Gillis has received all the fees he agreed to accept, but further work is needed that Gillis now cannot legally perform.

## C.   The Trustee's Objection and Gillis' Response

The Trustee filed almost identical objections to attorney compensation in <u>Cervantes</u> (doc. #63-69) and <u>Martinez/Chinchilla</u> (doc. #20-26) on February 18, 2020.  Trustee argues that under LBR 2016-3(c)(3), the court must evaluate the fees in each case under §§ 329 and 330.  Logically, the Trustee contends, Gillis' two-year state bar suspension in these cases with 36-month plans means Gillis cannot provide legal services to complete the cases and assist the debtors with post confirmation issues though he has received his entire fee.

The Trustee suggests the court apply a formula to evaluate proper fees that should be awarded Gillis in the opt-in cases with confirmed plans.  The Trustee's proposed formula breaks down a Chapter 13 debtor's counsel's task set into two major divisions: pre-confirmation tasks (60% of the fees are "earned" upon completion of this division) and post-confirmation tasks ( the remaining 40% are "earned" upon completion of this division).  Each division is composed of several discrete tasks and milestones.  We list them here with corresponding approximate percentages of their values within each division:

*Pre-confirmation-*

- ▪ Pre-petition consulting and fact gathering – 10%
- ▪ Petition, schedules and amendments – 43%
- ▪ Independent verification of information – 20%
- ▪ Original plan – 14%
- ▪ Law and motion (valuations, objections, etc.) – 13%

*Post-confirmation-*

- Claim administration and objections – 20%
- Post confirmation plans – 50%
- Certifications, closing and lien issues – 30%[6]

In response, Gillis argues first that he is a very experienced attorney and would be charging $425.00-$450.00 per hour on the chapter 13 cases if he chose to collect an hourly fee.[7]  He also argues the lodestar factor should be applied and then also argues it need not be applied.  Gillis does propose that he would accept the following resolution in confirmed cases and unconfirmed cases:

*Confirmed Cases* – In those cases where the no-look fee has not been fully paid, Trustee should hold any fees until these debtors are discharged.  Then, he proposes, he receive one-third of the fee.  The remaining fee should be held in reserve to pay the fee for any client in a confirmed case where the client incurs post–petition attorney's fees.  Those confirmed cases where the no-look fee has been fully paid, Gillis will waive any remaining fee.  Attorney Mark Hannon has agreed, according to Gillis, to handle those cases to conclusion with no further fee.

*Unconfirmed cases* – At the hearing on these objections, Gillis stated on the record that, subject to his right to appeal our rulings here, he will rely on the formula we devise for any fee payment he contends is due him.  That means Mr. Hannon or

---

[6] The Trustee's formula assigned an estimated number of hours to these discrete tasks resulting in an *hourly rate x time spent* calculation (after considering the flat fee amount as a starting place) leading the Trustee to his conclusions.  This calculation is known as "lodestar."

[7] Gills did not file his substantive response in either case before us. He filed his response in the miscellaneous proceeding the court established for the preliminary discussion of administering these fee matters affected by his suspension, case #20-101. Doc. #73-80.

1   other successor counsel will need to apply for fees and not rely

2   on the flat fee.[8]

3       Gillis does not quibble with the basic structure of

4   dividing major tasks but takes issue with Trustee's formula for

5   evaluating no-look fees. Gillis contends more value should be

6   given on all pre-confirmation tasks. Gillis urges 93% of

7   counsel's fees are earned through confirmation and only 7% are

8   earned post-confirmation. We list the two major divisions here

9   and Gillis' suggested values as approximated percentages of the

10   major divisions listing tasks and milestones:

11   *Pre-confirmation*

12     ▪ Pre-petition consultation and fact gathering – 11%

13     ▪ Preparation of "Tax and Pay" documents – 14%

14     ▪ Preparation of petition and schedules and SOFA – 28%

15     ▪ Preparation of original plan – 6%

16     ▪ Law and motion (valuation, objection responses) – 11%

17     ▪ Attendance at motions – 6%

18     ▪ Attendance at creditors' meeting with client (both

19        preparation and debriefing) – 11%

20     ▪ Amended Plan – 8%

21     ▪ Attendance at Amended Plan hearing – 4%

22     ▪ Preparation of confirmation order – 1%

23   *Post-confirmation*

24     ▪ Examination of claims – 16%

25     ▪ Preparation and appearance on claims objections or

26

27       [8] Earlier, the court issued an order in miscellaneous matter 20-101 (doc. #15) that Gillis would need to apply for any fees in unconfirmed cases

28   since the Trustee objected to the flat fee. Our orders issued in these matters, when final, will override the previous order on the issue of Gillis applying for fees in pending unconfirmed cases.

file claim for creditor – 38%

- Modified Plan – 38%

- Certificates and closing case – 8%[9]

*The United States Trustee's position*.  At the hearing for these objections, March 16, 2020, the United States Trustee asked for a one hundred eighty (180) day continuance of the hearing on these objections.  Earlier that day, the UST filed requests for orders for Rule 2004 examinations of the debtors in both cases.  The Chapter 13 Trustee's objections had been on calendar nearly one month with no formal response by the United States Trustee.  The justification for the request was that examinations of the debtors may reveal that no fees should have been paid to Gillis.[10]  Being both untimely and speculative, the court denied the request.

## Jurisdiction

The United States District Court for the Eastern District of California has jurisdiction over these matters under 28 U.S.C. § 1334(b) since this is a civil proceeding arising under title 11 of the United States Code.  The District Court has referred this matter to this court under 28 U.S.C. § 157(a) and General Order No. 182 for the Eastern District of California. This is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A) and (E).

---

[9] Gillis notes that many tasks are rarely included in "average cases" including amended plans and hearings on the plans, objections to claims and hearings on objections, and post-confirmation modified plans.  He discounts the values of each "uncommon" task in his calculation.

[10] The United States Trustee also referenced the "COVID-19 pandemic" as additional justification for the lengthy continuance but no specific rationale for that delay relating to these matters was offered.

**Discussion**

1. The Bankruptcy Court has discretion to examine the
reasonableness of "the flat fee."

A bankruptcy court's decision regarding the proper amount
of fees to be awarded counsel is reviewed for abuse of
discretion.  Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In
re Park-Helena Corp.), 63 F.3d 877, 880 (9th Cir. 1995) (cert.
den. 516 U.S. 1049 (1996)); Hale v. United States Tr., 509 F.3d
1139, 1146 (9th Cir. 2007).  In employing the fee setting
criteria of § 330(a), the bankruptcy judge is accorded wide
discretion.  In re Fin. Corp. of Am., 114 B.R. 221, 224 (B.A.P.
9th Cir. 1990).

The Bankruptcy Code's threshold for awarding fees to most
professionals is outlined in § 330(a).  When evaluating the
reasonableness of a professional's fee, § 330(a)(3) instructs
courts to consider time spent, rates charged, necessity or
beneficial nature of the service, timeliness, skill of the
professional and customary compensation by comparably skilled
professionals outside of the bankruptcy field.  But, when
evaluating compensation for a debtor's attorney in a chapter 13
case, the focus is slightly different:

> In a chapter 12 or chapter 13 case in which the debtor is
> an individual, the court may allow reasonable compensation
> to the debtor's attorney for representing the interests of
> the debtor in connection with the bankruptcy case based on
> a consideration of the benefit and necessity of such
> services to the debtor and the other factors set forth in
> this section. § 330(a)(4)(B).

See also In re Pedersen, 229 B.R. 445, 448 (Bankr. E.D. Cal. 1999). The Supreme Court in Lamie v. United States Tr., 540 U.S. 526, 537 (2004) noted "[c]ompensation for debtors' attorneys in Chapter 12 and 13 bankruptcies, for example, is not much disturbed by § 330 as a whole." This opens compensation for attorneys in Chapter 13 cases based on other than the traditional hourly charge.

Independent of the authority under § 330, the court has inherent authority to order disgorgement of all compensation in the appropriate case. Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis), 113 F.3d 1040, 1045 (9th Cir. 1997) (disgorgement ordered due to counsel's misrepresentation in appointing documents and acceptance of fees post-petition). This stems from the court's general authority to scrutinize compensation. Id. In Lewis, the Ninth Circuit affirmed a bankruptcy court order requiring an attorney to disgorge all compensation without a finding that the fees were "excessive." The attorney there failed to properly disclose fees and misled the court concerning a post-petition fee payment.

Before us are chapter 13 cases involving individuals. Gillis represented these individuals before his suspension. Initially, we must consider the benefit and necessity of the services he provided and apply the other factors in § 330(a). Our consideration is complicated by Gillis' candid representation that he has not kept contemporaneous time records. So, we cannot precisely quantify and evaluate the factors in § 330(a)(3). Nor is a "lodestar" analysis available to us. Since Gillis is now suspended, he cannot perform all

services included in the opt-in or flat fee and we must discern
what portion, if any, has been earned.[11]  We do not exercise that
discretion in a vacuum.  We are guided by other code provisions
and rules.

2.  The court may adjust agreed compensation as appropriate.

     Section 329 gives the court a statutory basis to critically
evaluate debtors' counsel's compensation.  Subdivision (b)
provides:

> If such [debtor's attorney's] compensation exceeds the
> reasonable value of any such services, the court may cancel
> any such agreement, or order the return of any such payment,
> to the extent excessive, to –
>
>     (1)  the estate, if the property transferred –
>          (A)  would have been property of the estate; or
>          (B)  was to be paid by or on behalf of the debtor
>               under a plan under chapter 11, 12, or 13 of
>               this title; or
>     (2)  the entity that made such payment.

Rule 2017 implements this section and gives the court authority
"on the court's own initiative" after notice and a hearing to
determine whether any payment or transfer by the debtor to an
attorney either before or after the petition was filed is

---

[11] We are mindful that regulation of attorneys is controlled by state
law.  In California, no person may recover compensation for services as an
attorney unless he or she was a member of the state bar at the time services
were rendered.  Z.A. v. San Bruno Park and School District, 165 F. 3d 1273,
1275 (9th Cir. 2009) citing Birbrower, Montalbano, Condon & Frank v. Superior
Court, 17 Cal. 4th 119, 127 cert. denied 525 U.S. 920 (1998).  Cal. Rule of
Prof'l Conduct 1.16 (e) directs what a lawyer should do upon termination of
representation.  Among those duties, subdivision (2) provides in part:"
promptly. . .refund any part of a fee or expense paid in advance that the
lawyer has not earned or incurred."

excessive.  <u>See</u> Rule 2017(a) and (b).[12]  Section 330 sets the

standard by which courts should determine the reasonableness of

the fees under § 329.  <u>Am. Law Ctr. PC, V. Stanley (In re</u>

<u>Jastrem)</u>, 253 F.3d 438, 443 (9th Cir. 2001); <u>Law Offices of</u>

<u>David A. Boone v. Derham-Burk (In re Eliapo)</u>, 298 B.R. 392, 401

(B.A.P. 9th Cir. 2003) (affirmed in part, reversed in part and

remanded by <u>Law Office of David A. Boone v. Derham-Burk (In re</u>

<u>Eliapo)</u>, 468 F.3d 592 (9th Cir. 2006)).

LBR 2016-1(c)(5) provides additional authority for the

court to examine the no-look fee:

> The Court may allow compensation different from the
> compensation provided under this Subpart [i.e. (c)]
> any time prior to entry of a final decree, if such
> compensation proves to have been improvident in light
> of developments not capable of being anticipated at
> the time the plan is confirmed or denied confirmation.

There is no definition of "improvident" in the code or the local

rules.  It is defined as "[o]f, relating to, or involving a

judgment arrived at by using misleading information or a

mistaken assumption." <u>Black's Law Dictionary</u> (10th ed. 2014).

From our perspective, it was not foreseen that Gillis would face

a two-year suspension when the plans were confirmed in these

cases.[13]  We do not know if Gillis' clients knew of the impending

suspension.  Nevertheless, Gillis, having received the full fee,

---

[12] Rule 2017(a) only focuses the examination of pre-petition payments made "in contemplation of the filing of a petition."  Rule 2017(b) says examination of fees paid after the order for relief extends to "services in any way related to the case."

[13] Mr. Cervantes's Chapter 13 Plan was confirmed June 26, 2018, nearly ten months before Gillis signed the suspension stipulation with the State Bar.  Mr. Martinez's and Ms. Chinchilla's plan was confirmed September 12, 2019, almost five months *after* Gillis signed the suspension stipulation.

has been paid more than what was earned.  The full fee included
completion of the cases.  Gillis will not complete the cases.
Gillis' suspension, post-confirmation, was not anticipated.  The
court will determine the appropriate fee and order Gillis to
return any unearned portion.

Our circuit has applied § 329(b) and ordered fee
disgorgement in chapter 13 cases for various reasons.  See, Hale
v. United States Tr. (In re Basham), 208 B.R. 926, 929-32
(B.A.P. 9th Cir. 1997) (lack of timely fee disclosures under
Rule 2016 supported ordering counsel's disgorgement of fees and
failure to keep contemporaneous time records prevented the court
from identifying who performed each service and whether the
services were performed at a reasonable rate and within a
reasonable amount of time); Determan v. Sandoval (In re
Sandoval), 186 B.R. 490, 495-96 (B.A.P. 9th Cir. 1995) (fee
disgorgement ordered by predecessor counsel when successor
counsel performed many services to "fix" various problems with a
chapter 13 case); In re Larson, No. 03-02488, 2004 Bankr. LEXIS
2490 (Bankr. D. Idaho Feb. 4, 2004) (disgorgement ordered after
fee approval in Chapter 13 case because counsel accepted fees
without court approval); In re Revoir, Nos. 08-64892-aer 13, 09-
6 2009 Bankr. LEXIS 2725 (Bankr. D. Or. Sep. 3, 2009) (flat fee
agreement cancelled, and fees disallowed when attorney was
suspended from practice, did not notify the client of the
suspension, and failed to timely secure substitute counsel);
Smith-Canfield v. Spencer (In re Smith-Canfield), Nos. 08-61630-
fra13; 09-6327-fra, 2011 Bankr. LEXIS 1822 (Bankr. D. Or. May
17, 2011) (All counsel fees ordered disgorged after plan

16

confirmation and fee payment because of debtor's counsel's conflict of interest).  We apply it here.

We disagree with Gillis' contention that the Trustee has the burden of proof on these objections.  First, that is not the law.  Under § 329(b), the initial burden is on the attorney to justify compensation charged in connection with a bankruptcy case.  Am. Law Ctr. PC, V. Stanley (In re Jastrem), 253 F.3d 438, 443 (9th Cir. 2001); Snyder v. Dewoskin (In re Mahendra), 131 F.3d 750, 757 (8th Cir. 1997); In re Wilde Horse Enters., Inc., 136 B.R. 830, 839 (Bankr. C.D. Cal. 1991).

Second, the Ninth Circuit has already embraced a presumptive or no-look fee as an acceptable compensation model in Chapter 13 cases.  See Law Office of David A. Boone v. Derham-Burk (In re Eliapo), 468 F.3d 592, 599 (9th Cir. 2006).  So, confusing the review of both suggested formulae with lodestar analysis (or not) is unnecessary.

Third, Gillis' primary authority, In re Blackwood Assocs., L.P., 165 B.R. 108, 112 (Bankr. E.D.N.Y. 1994) is distinguishable.  A secured creditor there objected to debtor's counsel's interim fee application as generally excessive.  The "burden" referenced by the Blackwood court was for the objecting creditor to explain what in the application was unreasonable, "or, at least, what would be reasonable under the circumstances."  Id. at 112.  The Blackwood court noted the fee applicant must make a *prima facie* case in support of the requested award.  Id. at 111.  The flat fee here is unsupported by a fee application.  The Trustee here has no specifics to analyze and explain what is unreasonable.  Gillis did not keep

contemporaneous time records in these cases.  So, the issue is whether the fee already paid to Gillis is excessive.  The Trustee has explained what he contends is unreasonable about the fee: Gillis cannot perform the services required to be paid the entire fee.

We also reject Gillis' argument made at the hearing that he be paid an hourly fee of up to $450.00 per hour on a lodestar basis if the flat fee is disregarded.  First, Gillis has presented no authority (we have found none) for the proposition that if an attorney breaches his contract with the client, the attorney can charge more than the client agreed.

Second, in the Ninth Circuit, lodestar is the primary but not exclusive means to evaluate fees in bankruptcy cases.  <u>See</u>, <u>Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc. (In re Puget Sound Plywood, Inc.)</u>, 924 F.2d 955, 960 (9th Cir. 1991); <u>In re Kitchen Factors, Inc.</u>, 143 B.R. 560, 562 (B.A.P. 9th Cir. 1992) (lodestar should be abandoned when the court cannot "realistically quantify (hours x. time spent) to numerical precision" or where the fee application provides an inadequate "basis for the lodestar calculation.")

Third, the cases Gillis cites on the application of the lodestar in bankruptcy cases simply do not hold what he advocates.  The cited cases either have been rejected by this circuit (<u>Boddy v. U.S. Bankruptcy Court (In re Boddy)</u>, 950 F.2d 334, 335-37 (6th Cir. 1991) (presumptive fee awards are arbitrary and capricious), rejected by <u>Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)</u>, 298 B.R. 392, 402 (B.A.P. 9th Cir. 2003); never favorably cited in this circuit in a

18

published decision, (see In re Great Sweats, 109 B.R. 696 (E.D. Va. 1989) (bankruptcy court's ruling reducing Chapter 11 debtor's counsel's fees vacated because bankruptcy court ignored lodestar); In re Cena's Fine Furniture, Inc., 109 B.R. 575 (E.D.N.Y. 1990) (same; distinguished in Kitchen Factors)); or the courts actually scrutinized the fees incurred even though the fee application is supported by lodestar, see In re E. Peoria Hotel Corp., 145 B.R. 956 (Bankr. C.D. Ill. 1991) (award lower than request because request was excessive) and In re Drexel Burnham Lambert Grp., 133 B.R. 13, 19 (Bankr. S.D.N.Y. 1991).

3.  The appropriate adjustment in these cases

     A.  The full flat fee paid to Gillis is excessive.

     Section 330(a)(4)(B) guides us in determining the appropriate fee adjustment in these cases.  The benefit and necessity of the services Gillis provided his clients in these cases and the other factors in § 330 are considered.

     We start by acknowledging these clients needed assistance when they went to Gillis for bankruptcy advice and protection. We also acknowledge the bankruptcy petitions and plan confirmation benefitted both debtors.  Mr. Cervantes has so far kept his home.  Mr. Martinez and Ms. Chinchilla have relief from their creditors.  Both debtors will receive a discharge if they complete their plans.  But that is not all we must consider.

     Gillis has breached his agreement with these debtors and will not be able to perform all his duties under the "Rights and Responsibilities."  He will not be able to file a proof of claim

for a creditor if Mr. Martinez and Ms. Chinchilla need that service. He will not be able to file and prosecute a motion to modify Mr. Cervantes's plan. Will the debtors need a motion to refinance? If so, Gillis cannot file that motion. Will the debtors get behind on their payments and face the Trustee's dismissal request? Gillis will not be their attorney. If further changes in loan payment amounts are presented by the debtors' lenders, will Gillis analyze them? Unlikely. Will Gillis be available to discuss any Chapter 13 Trustee disbursements the debtors do not understand or dispute? No. Will Gillis navigate the debtors through the certification process to receive their discharge? Not now. These services are among those to be performed for the no-look fee. And so, a portion of the fee paid to Gillis is excessive. Nothing in the record suggests these possibilities may not arise in these cases.

We are, on this record, unpersuaded by Gillis' claim that Attorney Mark Hannon will service for free the cases where a plan is confirmed, and Gillis was paid the full fee. The only evidence of this is a March 2, 2020 "Letter Agreement" attached as Exhibit B to Gillis' declaration. Doc. #77. Attorney Hannon states he will service those cases for free out of consideration of his and Gillis' friendship "and only apply for a fee if a particular case needs considerable legal work." <u>Id.</u> We consider the condition on that promise vague enough to be given very little weight.[14]

---

[14] As previously stated, Gillis initially claimed he would file fee applications in the unconfirmed chapter 13 cases since the Trustee has objected to the flat fee. <u>See</u> LBR 2016-1(a). But, at the hearing on these

True enough, under LBR 2016-1(c)(3) an attorney can request additional compensation in addition to the flat fee "where substantial and unanticipated post-confirmation work is necessary." But this record shows nothing about either case that would support such a request.

We have also carefully considered Attorney David Johnston's declaration Gillis offered as expert testimony. Doc. #76. A very experienced attorney, Mr. Johnston makes the point that almost all work in average chapter 13 cases is performed while achieving confirmation of the plan. We generally agree and take that into account in achieving our formula. He also opines that in his experience, substantial post-confirmation work is only needed in 10% of the cases. That said, Mr. Johnston also states the attorney must be available in case additional work is needed. Gillis cannot be available in these cases. Though Mr. Johnston claims the actual tasks of preparing the certifications as pre-requisites to discharge are performed without charge in his office, the attorney still presumably reviews those these to be sure they are proper.

B. The fee adjustments needed.

After considering the suggested "rubrics" offered by the Trustee and Gillis and taking into account the specific circumstances each of these cases involves, we find the following formula an appropriate template if the court is asked to consider fees paid or promised in those cases in which Gillis was counsel and has received some or all of the opt-in fee. The

---

objections, Gillis said he would accept the fee established by the court's formula in these cases in unconfirmed Chapter 13 cases.

table below shows the percentage of opt-in fee *earned* at various stages of the case.

- Phase I (pre-petition through meeting of creditors) - 30% earned.
- Phase II (meeting of creditors through initial confirmation) - 60% earned.[15]
- Phase III (confirmation to 90 days after Notice of Filed Claims) - 80% earned.
- Phase IV (discharge, closure, certifications, necessary lien clearances) - 100%.

This formula should be helpful in other cases, but we leave it to the parties in interest in those cases the opportunity to persuade us that this formula should be modified on a case-by-case basis. We recognize no formula will be entirely correct in every case.

C. Application of the adjustments to the cases

I. *Cervantes* case - This case has been pending for over two years. The plan is confirmed, the Notice of Filed Claims was filed in August 2019 and the time to object to claims expired months ago. Mr. Cervantes will need a modified Plan if there are any remaining defaults, the case needs to be closed, and the discharge entered. Applying the formulas means Gillis earned $3,200.00.

---

[15] This allocation is consistent with LBR 2016-1(c)(4) which provides that absent a contrary order, upon dismissal of a case when the attorney elects the flat fee "the trustee shall pay to the attorney, to the extent funds are available, an administrative claim equal to fifty per cent (50%) of the total fee the debtor agreed to pay less any pre-petition retainer . . . ." If the plan is confirmed, debtor's counsel should earn more than if the case was dismissed.

<u>Further adjustment for work actually performed</u>—According to Mr. Cervantes' testimony at the dismissal motion, Gillis did not meet with him before the meeting of creditors.  We understand the efficiencies that can be realized by skilled practitioners in a "volume" Chapter 13 practice.  But those efficiencies do not rationalize paying little heed to a client's pre-petition legal counseling.  We conclude that the formula amount should be reduced by $600.00 which represents a fair discount since Gillis did not provide the pre-petition consultation and counseling he agreed to provide under the "Rights and Responsibilities." Gillis should therefor refund $1400.00.

      II. *Martinez-Chinchilla* case —  This case was filed less than a year ago and the plan was confirmed six months ago. The Notice of Filed Claims was filed about three months ago and the deadline to file modified plans triggered by the claims has just passed.  Gillis' suspension began before that time expired. So, he could not file a modified plan if it was necessary. Other than filing claims on behalf of a creditor and analyzing the payments change, this case will also need to be closed and the discharge entered.  But Gillis was unable to act as debtors' counsel during the period to consider filing a modified plan triggered by the claims.  The $4,000.00 fee is excessive for the reasons stated.  Since Gillis was not counsel when the deadline passed for filing motions to modify due to the filed claims, he

///
///
///
///

is entitled to 60% of the opt-in fee.  Gillis shall refund
$1,600.00.[16]

## Conclusion

For the foregoing reasons, the Trustee's objections are
SUSTAINED.[17]  Separate orders will issue requiring Thomas O.
Gillis to refund to the Chapter 13 trustee the following amounts
in the following cases:  *In re Alejandro Cervantes* 18-10306—
$1400.00; *In re Julio Martinez and Blanca Chinchilla* 19-12274—
$1600.00.[18],[19]

**Dated:** Mar 31, 2020

_____
Fredrick E. Clement
United States Bankruptcy Judge

**Dated:** Mar 31, 2020          **By the Court**

_____
René Lastreto II, Judge
United States Bankruptcy Court

_____

[16] The Trustee reminds us that fee refunds may impact "the liquidation
analysis." That may not be an issue in these or every case.  We will leave it
to the Trustee to determine that.  We agree with the Trustee that if the
"liquidation analysis" in these or other cases is not impacted, the refunded
monies should go to the debtors.
[17] This order, when final, overrules Judge Clement's previous order,
doc. #15 in case no. 20-101.
[18] The foregoing are the court's findings of fact and conclusions of law
under Civ. Rule 52 made applicable to contested matters by Rule 9014(c).
Should it be determined this court cannot enter a final judgment in this
matter the foregoing are the court's proposed findings of fact and
conclusions of law under 28 U.S.C. § 157(c).
[19] Though present at the hearing, the Chief Bankruptcy Judge has not
signed either this decision or orders in light of him not being the assigned
judge in either of these two lead cases.

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

     The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked   X  , via the U.S. mail.

Michael H. Meyer
PO Box 28950
Fresno CA 93729-8950

Russell D. Greer
PO Box 3051
Modesto, CA 95353

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno CA 93721

Thomas O. Gillis
1006 H Street #1
Modesto CA 95354

Alejandro Cervantes
701 W. Magill Ave
Fresno CA 93704

Julio Barrera Martinez
2321 N. Marty Avenue
Fresno CA 93722

Blanca Esmeralda Chinchilla
2321 N. Marty Avenue
Fresno CA 93722